# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| ACADIAN CONTRACTORS, INC. | : | CIV. ACTION NO. 13-0413 |
| VS. | : | JUDGE RICHARD T. HAIK, SR. |
| LEXINGTON INSURANCE CO. *ET AL.* | : | MAG. JUDGE PATRICK J. HANNA |

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

I.  FACTUAL AND PROCEDURAL BACKGROUND ........................................ 1

II.  LAW AND ARGUMENT ............................................................... 7

      A.    The Court Lacks Diversity Jurisdiction Over
           Acadian's Claims Because Acadian Properly
           Joined Defendant Thibeaux. ..................................................... 7

           1.  The Defendants' Heavy Burden ...................................... 7

           2.  Acadian Has Pleaded a Viable Cause
               of Action Against Defendant Thibeaux ........................... 9

      B.    The Court Lacks Original Jurisdiction Under
           the OCSLA ............................................................. 19

      C.    Supplemental Jurisdiction Cannot Serve as the
           Basis For Removal of Acadian's Claims ............................. 21

III.  CONCLUSION ..................................................................... 22

# TABLE OF AUTHORITIES

Case Authorities:

*Marcel v. Placid Oil Co*., 11 F.3d 563 (5th Cir. 1994)........................................................................................ 2

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). ........................................................ 7, 8

*Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001) .......................................................................... 7, 8

*St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288, 58 S.Ct. 586, 590 (1938) ............................. 8

*Garcia v. Koch Oil Co. of Texas, Inc*., 351 F. 3d 636, 638 (5th Cir. 2003) ....................................................... 8

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872 (1941)................................. 8

*Eastus v. Blue Bell Creameries, L.P.*, 97 F. 3d 100, 106 (5th Cir. 1996) ........................................................... 8

*B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) ..................................................................... 8

*Smallwood v. Illinois Railroad Company*, 385 F.3d 568, 573 (5th Cir. 2004) ................................................ 8

*Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281 (5th Cir. 2007) ........................................................ 9

*White v. Allstate Ins. Co*., 513 F.Supp.2d 674, 682 (E.D. La. 2007)………… ...................................................11

*Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La. 1993)…………................................................................... 11

*Roger v. Dufrene*, 613 So. 2d 947, 949 (La. 1993) ...................................................... 15, 16

*Smith v. Millers Mutual Insurance Co.,* 419 So2d 59, 64 (La.App. 2 Cir. 1982), *writ denied*, 422 So.2d 155 (La. 1982). ......................... 16

*Ragas v. Tarleton*, 06-4137, 2006 WL 2925448 (E.D.
La. Oct. 10, 2006) ...................................................................................... 16, 17

*Leblanc v. Mid-Continent Life Ins.*, 93-2677, 1993
WL 432374 (E.D. La. Oct. 21, 1993)................................................................. 17

*Karam v. St. Paul Fire & Marine Insurance Co.,*
281 So.2d 728, 730-31 (La. 1973)..................................................................... 18

*Prest v. Louisiana Citizens Property Ins. Corp.,*
2012-0513, *8 (La. 12/4/12); --- So.3d ---............................................................ 18

*Amoco Production Co. v. Sea Robin Pipeline Co.,*
844 F.2d 1202, 1207 (5th Cir. 1988)................................................................. 20

*Dominion Exploration & Prod., Inc. v. Ameron Int'l
Corp.*, CIV.A. 07-3888, 2007 WL 4233562 (E.D. La.
Nov. 27, 2007)...............................................................................................20

*Huffco Petroleum Corp. v. Transcon. Gas Pipe Line
Corp.*, 681 F. Supp. 400, 401-02 (S.D. Tex. 1988)..............................................20

*Pogo Producing Co. v. S. Natural Gas Co.*, 599 F.
Supp. 720, 722 (W.D. La. 1984) ......................................................................... 20

*Syngenta Crop Prot., Inc. v. Henson*, 537 U.S.
28, 34 (2002) ..................................................................................................22

*Halmekangas v. State Farm Fire & Cas. Co.*, 603
F.3d 290, 295 (5th Cir. 2010)............................................................................22

Statutes:

La. Rev. Stat. § 9:2780 ..................................................................................... 2

28 U.S.C. § 1332 ............................................................................................... 6

43 U.S.C. § 1349 ........................................................................... 6, 19, 20, 23

28 U.S.C. § 1367 ......................................................................................... 7, 22

La. Rev. Stat. § 9:5606(A) ................................................................................ 9

NOW INTO COURT, through undersigned counsel, comes Acadian Contractors, Inc. ("Acadian"), who has moved this Honorable Court to remand this case for the reasons hereinafter set forth.

MAY IT PLEASE THE COURT:

This action arises out of the failure of defendant, Bernard C. Thibeaux, Jr. ("Thibeaux" or the "Producer"), to procure certain general liability insurance in favor of an Acadian customer as promised by Thibeaux to Acadian.   Acadian filed this action in state court against Thibeaux, as well as his employer, its insurer, and Lexington Insurance Company ("Lexington"), the insurer which wrongfully denied its coverage obligations to the customer and Acadian.  The defendants removed this action on February 25, 2013, alleging, among other things, the improper joinder of Thibeaux.   Acadian files the instant Motion to Remand as this Court's subject matter jurisdiction does not apply to the well pleaded facts of Acadian's complaint.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Acadian is a Louisiana business that provides construction, maintenance, and other services to oil and gas companies, both onshore and offshore.[1]   The contracts for these services often contain a Master Service Agreement ("MSA"), which acts as an umbrella document covering the terms and conditions of the engagement, including, in some cases, certain indemnity and insurance provisions.   Periodically, Acadian's clients include a provision in their

---

[1]   See Acadian's Petition, attached to the Notice of Removal as Exhibit A, ¶ 3.

respective MSAs with the intent to allow the client to be added as an additional insured to Acadian's comprehensive general liability ("CGL") insurance.[2] For several years, Acadian has procured its insurance through Thibeaux.[3]   That insurance coverage has been written by Lexington.[4]

Several of Acadian's clients over the last few years have sought to be added as additional insureds on Acadian's CGL coverage through their respective MSAs.[5]  As the insurance agent for Acadian, Thibeaux agreed to invoice each of Acadian's customers and procure such coverage, including coverage for Merit Energy Company ("Merit").[6]

In each of those instances, before Acadian executed the MSA, Acadian provided the draft MSA to Thibeaux for his review.[7]  Thibeaux -- or an employee working under his supervision -- would then review the specific insurance and indemnity requirements of the MSA, determine the amount of the additional premium, agree to invoice the third-party customer for cost of the additional

---

[2]    See Exhibit A, Affidavit of Glynn Hebert, at ¶ 3.  Acadian requires that its clients bear this additional cost and responsibility in order to comply with the Louisiana Oilfield Indemnity Act, La. R.S. 9:2780, and the United States Court of Appeals for the Fifth Circuit's decision in *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994).

[3]    See Exhibit A, Affidavit of Glynn Hebert, at ¶ 4.

[4]    *Id*. at ¶ 4.

[5]    *Id*. at ¶ 3.

[6]    *Id*. at ¶ 4.

[7]    *Id*. at ¶ 4.

premium and, finally, issue the invoice.[8]   Thereafter, Thibeaux would have an invoice sent to the customer for each following year.[9]

Once the MSA was signed and Acadian provided basic information regarding the customer and the projected scope of work, Acadian's involvement in the process ended.[10]   Thibeaux and his employer(s), HUB International Gulf South Limited and/or HUB International Midwest Limited d/b/a HUB International Gulf South (collectively "HUB"), agreed that the process of invoicing the additional premium would be solely their responsibility.[11]   In fact, Acadian does not even receive copies of the invoices and receives no regular, contemporaneous notice as to which of the additional insureds pays for coverage in the initial or future policy periods.[12]

Thibeaux has been the agent/producer for Acadian for several years now, and in that capacity, agreed to invoice Acadian's clients for the additional premiums and has undertaken a duty to Acadian and its customers to ensure that the invoices for additional insured coverage were properly sent.[13]   In fact, it is believed that Thibeaux did for, several years, faithfully fulfill that duty and

---

[8]     *Id*. at ¶ 4.

[9]     *Id*. at ¶ 4.

[10]    *Id*. at ¶ 5.

[11]    See *id*. at ¶ 5.  See also ¶¶ 12, 18.

[12]    *Id*. at ¶ 6.

[13]    See *id*. at ¶ 4.

MEMORANDUM IN SUPPORT OF MOTION TO REMAND                    Page 3 of 23

properly issue the invoices directly to Acadian's customer's, including Merit.[14] However, some time in early 2010, Thibeaux left his employer and joined HUB.[15] At that time, HUB assumed and shared the duty with Thibeaux, an employee and/or agent of HUB, to send the invoices, allowing the customers to preserve their coverage with Lexington.  In fact, it is evident that shortly after Thibeaux transferred from his former employer to HUB in 2010, HUB employees working at the direction of Thibeaux continued to review MSAs, quote additional insured premiums and invoice Acadian customers directly.[16]

On September 4, 2012, Thibeaux, as well as a claims representative for HUB, met with Acadian, in Acadian's office in Vermilion Parish, Louisiana, and told Acadian -- for the first time -- that the Agency Defendants had breached their duty to Acadian and failed to send an invoice to (at least) one of the additional insureds for payment of the additional premium for a policy issued by Lexington for the period of June 13, 2010 through June 13, 2011 (the "2010 Lexington Policy").[17]  At no prior time, including the time of the renewal of the CGL coverage for this policy period, did the Agency Defendants inform Acadian of this critical omission.[18]  In

---

[14]    See id. ¶ 4.

[15]    See Petition, ¶ 10, n.1.  HUB and Thibeaux will hereinafter be collectively referred to as the "Agency Defendants".

[16]    See, e.g., the April 20, 2010 e-mail attached to the Affidavit of Glynn Hebert as Exhibit 4.

[17]    See Petition, ¶ 17.  See also Exhibit A, Affidavit of Glynn Hebert, ¶ 17.

[18]    Exhibit A, Affidavit of Glynn Hebert, ¶ 17.

fact, it appears that not even Merit, Thibeaux or HUB knew of the issue until after Merit was sued, tendered coverage, and Lexington denied coverage just prior to the September 4, 2012 meeting.   Prior to that impromptu meeting by Thibeaux, wherein he admitted the fault of the Agency Defendants, Acadian had no reason to know or suspect that Merit had not been billed as agreed by Thibeaux and as had become the custom of the parties for several years.[19]

Moreover, the 2010 Lexington Policy includes a special endorsement titled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS" that amended the Policy to include in the definition of the an "Insured" the following:

> Any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "Occurrence" of the "Bodily Injury" or "Property Damage".[20]

Thus, Lexington represented to Acadian that, as in the past, Acadian's customers who requested additional insured coverage in their written MSA, including Merit, were provided coverage under the 2010 Lexington Policy.

It was at the time of the admission by Thibeaux that Acadian learned Merit had been sued for personal injury damages arising from an offshore accident, and had been denied coverage under the Lexington Policy because the additional

---

[19]    *Id.* at ¶ 17.

[20]    See *id.* at ¶ 16 and the 2010 Lexington Policy, attached as Exhibit 3 to the affidavit of Mr. Hebert.

MEMORANDUM IN SUPPORT OF MOTION TO REMAND                    Page 5 of 23

premium had not been paid.[21]  Merit subsequently filed a third party claim against Acadian, seeking indemnity under the parties' MSA as a result of the Agency Defendants' failure to send an invoice to Merit for coverage under the 2010 Lexington Policy.

On January 14, 2013, Acadian filed the instant suit against the Producer, HUB, HUB's insurer: Darwin Select Insurance Company ("Darwin Select"), and Lexington, in the 15th Judicial District Court in and for Vermilion Parish, Louisiana, under Docket No. 96648, Division D (the "State Court Suit"). The State Court Suit involves claims by Acadian seeking damages, declaratory relief, and defense and indemnification from and against Thibeaux, HUB and their insurer arising out of the Agency Defendants' failure to invoice Merit for the cost of the additional insured premium, resulting in potential liability for Acadian in the Merit Suit.  The State Court Suit also seeks recovery for Lexington's failure to provide defense and indemnity to Acadian and Merit in that litigation.

On February 25, 2012, the Defendants removed this case to federal court.  Despite the absence of complete diversity between the parties and the fact that one defendant, Thibeaux, is domiciled in the forum state, the Defendants contend that the Court has subject matter jurisdiction over the claim under 28 U.S.C. § 1332.  The Defendants also assert that the Court has subject matter jurisdiction pursuant to 43 U.S.C. § 1349, despite the fact that the State Court

---

[21]   That suit is pending in the United States District Court for the Western District of Louisiana, and is captioned as *Edward A. Thibeaux vs. Merit  Energy Co. LLC, et al*, Docket No. 12-817 (the "Merit Suit").

Claim arises out of a dispute involving paperwork performed on land, and has no connection to exploration, development, production or any other "operations" performed on the Outer Continental Shelf.  Finally, Defendants' claim that the Court enjoys supplemental jurisdiction under 28 U.S.C. § 1367 fails as a matter of law, as supplemental jurisdiction cannot serve as the basis for removal of state law claims.

For the reasons set forth below, it is respectfully submitted that this Honorable Court should remand this matter to the 15th Judicial District Court in and for Vermilion Parish, Louisiana.

## II.    LAW AND ARGUMENT

### A.    The Court Lacks Diversity Jurisdiction Over Acadian's Claims Because Acadian Properly Joined Defendant Thibeaux.

The Agency Defendants first assert that the Court has diversity jurisdiction over Acadian's claims.  However, as clearly shown in the Petition, there is a lack of complete diversity between the parties, since both Acadian and Thibeaux are Louisiana citizens.  In addition, at least one defendant is domiciled in the forum state, in violation of 28 U.S.C.A. § 1441(b)(2).  Finally, because Acadian has stated a viable cause of action against Thibeaux, Defendants have failed to meet their heavy burden of proving improper joinder.

#### 1.    *The Defendants' Heavy Burden*

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001) (citing same).  "They possess only that power

MEMORANDUM IN SUPPORT OF MOTION TO REMAND                Page 7 of 23

authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"  *Kokkonen,* 511 U.S. at 377 (internal citations omitted).  Thus, a court "**must presume** that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery,* 243 F.3d at 916 (citing *Kokkonen*) (emphasis added).

"[T]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590 (1938); *Garcia v. Koch Oil Co. of Texas, Inc.*, 351 F. 3d 636, 638 (5th Cir. 2003).  Federal removal statutes are **strictly construed** against removal and in favor of remand.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872 (1941); *Eastus v. Blue Bell Creameries, L.P.*, 97 F. 3d 100, 106 (5th Cir. 1996).

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one."  *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).  To establish improper joinder, the removing defendant must show "whether the defendant has demonstrated that there is **no possibility** of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Smallwood v. Illinois Railroad Company*, 385 F.3d 568, 573 (5th Cir. 2004) (emphasis added).  In deciding whether a party was improperly joined, the federal court must resolve all contested factual

issues and ambiguities of state law in favor of the plaintiff.  *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281 (5th Cir. 2007).   Thus, "any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281-82.

### 2. *Acadian Has Pleaded a Viable Cause of Action Against Defendant Thibeaux.*

In its petition, Acadian sets forth claims against Thibeaux for breach of his duty to send an invoice for an additional insured premium to Merit. Nevertheless, citing several inapplicable authorities, the Defendants contend in their Notice of Removal that the claims against Thibeaux fail because they are either perempted or were not asserted against him "in his personal capacity." These contentions misstate both Acadian's claims and the relevant law of the state of Louisiana, and will be addressed in turn.

a.   <u>Acadian's claims are not prescribed or perempted.</u>

A suit against an insurance agent must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission or neglect is discovered." La. R.S. 9:5606(A).  In this case, the peremptive period began to run on September 4, 2012, when Acadian first learned of the omission by Thibeaux, which constituted a breach of the Agency Defendants' duty to Acadian.  Acadian filed suit on January 14, 2013, well within the one-year period.

Nevertheless, the Defendants contend the one-year period commenced to run in June 2010, when the relevant policy was issued to Acadian.  The Notice of Removal, however, fails to state with any specificity how or why Acadian "should

have known" of Thibeaux's breach at that time.  In fact, the Notice of Removal is devoid of any evidence of the alleged notice to Acadian.  In addition, this argument overlooks several facts concerning (1) the language of the policy which indicates that Merit was provided coverage and (2) the established custom of the parties whereby none of the Defendants provided regular or reliable notice to Acadian of the status of the various additional insured premium payments.

First, as stated above, the 2010 Lexington Policy contained an omnibus endorsement.   Rather than list each additional insured by name, Lexington apparently elected to identify the additional insureds in the endorsement as follows:

> Any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "Occurrence" of the "Bodily Injury" or "Property Damage.[22]

Certainly, Acadian was reasonable in relying on Lexington's own policy that applied not only to Merit, but every other additional insured.  Indeed, this particular policy issued by Lexington did not identify any single Acadian customer as an additional insured.  Instead, it apparently relied on this omnibus language.  Thus, to the extent that the Defendants regard this language as notice to Acadian that Thibeaux had failed to fulfill his duty to send the invoice to Merit, their argument must fail.

Second, the methods employed by Lexington for listing the additional insureds in the policy endorsements were so inconsistent over the years that

---

[22]   2010 Lexington Policy, Endorsement # 20. The 2010 Lexington Policy is attached to the Affidavit of Glynn Hebert as Exhibit 3.

Acadian was unmoved by the appearance of the omnibus endorsement.[23]  A brief look back at some of the other policy years will illuminate this point.

- For the period of June 13, 2007 through June 13, 2008, the policy specifically lists Merit along with only six other named additional insureds. Nevertheless, Acadian had several other customers who requested the additional insured coverage and to whom Thibeaux (presumably) had issued invoices for the additional coverage. Nevertheless, there is no express mention of those customers in the 2007-2008 policy.[24]

- For the period of June 13, 2008 through June 13, 2009, Acadian was not provided with any endorsement addressing the identity or identities of any additional insureds.  Rather, some nine (9) months after the policy was in effect, Acadian received an endorsement adding Merit as an additional insured in March of 2009, and Acadian was not provided with endorsements for its other customers requesting such coverage.[25]

---

[23]     Arguably, until Lexington denied coverage, there could not have even been a claim by Acadian against the defendants. See *White v. Allstate Ins. Co.*, 513 F.Supp.2d 674, 682 (E.D. La. 2007).  See also La. C.C. art. 3492 *and Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La. 1993) (stating that in order for a cause of action to accrue, damage must have been sustained which manifested itself with sufficient certainty to support accrual of a cause of action).

[24]     See Exhibit A, Affidavit of Glynn Hebert, at ¶ 9 and 2007-2008 Lexington Policy, attached as Exhibit 5 to the affidavit of Mr. Hebert.

[25]     See Exhibit A, Affidavit of Glynn Hebert, at ¶ 10, 2008-2009

- For the period of June 13, 2009 through June 13, 2010, there were specific endorsements for only two of the additional insureds, but Acadian was not provided with endorsements for any other of its customers.[26]  In fact, it wasn't until nearly a year later, when the renewal of the CGL policy was to occur, that Acadian was informed, for the first time, that Merit and one other customer had paid the additional insured premium for 2009-2010 and three other customers had not paid.[27]

- For the period of June 13, 2011 through June 13, 2012, the year after the period at issue, there is both an omnibus endorsement and a specific listing of another additional insured, but not a specific listing as to Merit.[28]

As clearly demonstrated by the variety of different methods for listing the additional insureds and failing to list additional insureds, Acadian never

---

Lexington Policy, attached as Exhibit 6 to the affidavit of Mr. Hebert, and March 2009 correspondence, attached as Exhibit 7 to the affidavit of Mr. Hebert.

[26]   See Exhibit A, Affidavit of Glynn Hebert, at ¶ 11 and 2009-2010 Lexington Policy, attached as Exhibit 8 to the affidavit of Mr. Hebert.

[27]   See Exhibit A, Affidavit of Glynn Hebert, at ¶ 12 and April 20, 2010 email attached as Exhibit 4 to Glynn Hebert's affidavit.  In fact, the e-mail chain even suggests that HUB also learned on April 20, 2010, for the first time, which customers had coverage for the prior year and which customers had not had coverage.

[28]   See Exhibit A, Affidavit of Glynn Hebert, at ¶ 13 and 2011-2012 Lexington Policy, attached as Exhibit 9 to the affidavit of Mr. Hebert.

expected Merit to be listed in any particular manner or even listed at all.  When Acadian received the omnibus endorsement in the 2010 Lexington Policy, this particular endorsement raised no red flags due to the wildly inconsistent pattern by Lexington over the years, and because in many other years certain additional insureds were not specifically listed at all.  Moreover, the failure of Lexington to provide a specific endorsement naming Merit until over nine (9) months after the effective date of 2008-2009 policy seriously undermines Defendants' argument that the failure of Lexington to contemporaneously include the same specific endorsement for the 2010-2011 policy period should have caused Acadian alarm.

In addition, there was no guarantee that any particular Acadian customer would actually pay the premium if invoiced.[29] Acadian understood that the existence of additional insured coverage would vary from year-to-year and customer-to-customer.  Thus, the addition or absence of a customer being listed as an additional insured for any particular year was common and the failure to include a specific additional insured endorsement for one or more customers was anticipated and certainly would not have raised suspicions that something was amiss.

Furthermore, the relationship between the parties was such that the

---

[29]    See *e.g.* Exhibit A, Affidavit of Glynn Hebert, at ¶ 18 as well as the June 10, 2008 e-mail and the April 20, 2010 e-mail attached as Exhibits 2 and 4, respectively, to the affidavit of Mr. Hebert, wherein Thibeaux's assistant indicates that some, but not all, of Acadian customers had not paid their additional insured premiums for the prior years.

MEMORANDUM IN SUPPORT OF MOTION TO REMAND                    Page 13 of 23

Agency Defendants assured Acadian that they would take care of the invoicing function and Acadian expected the Agency Defendants to be solely responsible for the process by which the additional insureds were invoiced for and paid for their coverage.  In a similar case involving an improper joinder claim on the basis of peremption, the Louisiana federal court considered the defendants' argument that the renewal of the insurance policy put the plaintiffs on notice of their agent's breach and started the peremption clock.[30]  Nevertheless, the federal court found it reasonable that the plaintiffs had relied on the expertise of the agent and his representations as to the adequacy of the plaintiffs' coverage, and granted the Motion to Remand on this basis.[31]  Likewise, in this case, Acadian reasonably relied on the expertise of both Thibeaux and HUB, as well as their assurances that they were fulfilling their duty to invoice Merit and preserve its coverage under the CGL policy.[32]  The Merit MSA and the custom of the parties speak to this relationship.

The MSA provides that Acadian's "insurers will invoice [Merit] the premium for such extension of coverage in favor of [Merit]" and further provides that Acadian's broker (Thibeaux) "will submit an invoice directly to" Merit.[33]  Thibeaux reviewed and approved of and assumed these obligations to invoice Merit

---

[30]     *White v. Allstate Ins. Co.*, 513 F.Supp.2d 674, 682 (E.D. La. 2007).

[31]     See *id.* (finding it reasonable that the plaintiffs were "lulled into complacency by representations made by [the agent].") (citation omitted).

[32]     See Exhibit A, Affidavit of Glynn Hebert, at ¶ 8.

[33]     See Exhibit A, Affidavit of Glynn Hebert, at ¶ 6 and the Merit MSA attached as Exhibit 1 to the affidavit of Mr. Hebert.

in the MSA.  For example, on June 10, 2008, Thibeaux's assistant emailed Acadian and stated that she would "send invoices directly" to Merit and other Acadian customers.[34]

Over the course of at least two (2) years prior to the issuance of the 2010 Lexington Policy, Thibeaux acted in accordance with that arrangement.   In fact, under the arrangement created and practiced by Thibeaux, once an additional insured was added to the Lexington Policy, Acadian played no role in the invoicing process, never received notice as to which of the additional insureds paid for coverage, and kept no records to that effect.  Because these processes were entirely handled by the Agency Defendants, the absence of an express mention of Merit, in particular, in the 2010 Lexington Policy was not alarming.

For the foregoing reasons, Acadian could not reasonably have discovered the Agency Defendants' breach when it received the 2010 Lexington Policy.   Acadian was completely and justifiably unaware of the breach until September 4, 2012, when it was first told that the invoice was not sent.

      b.    Acadian has set forth a claim against Thibeaux due to the breach of his assumed duty and his legal duty of "reasonable diligence."

The Louisiana Supreme Court has clearly and unequivocally recognized a duty of "reasonable diligence" owed by an insurance agent to his client and has compared it to the duty owed by several other types of professionals. *Roger*

---

34    <u>See</u> Exhibit A, Affidavit of Glynn Hebert, at ¶ 6 and the June 10, 2008 email attached as Exhibit 2 to the affidavit of Mr. Hebert.

*v. Dufrene*, 613 So. 2d 947, 949 (La. 1993).  In *Roger*, Louisiana's highest court stated:

> [W]e see no reason why the duty imposed upon an insurance agent in an action by a client against his agent should be any different than that imposed upon attorneys, physicians and accountants. The nature of certain professions is such that the fact of employment does not imply a promise of success, but an agreement to employ ordinary skill and care in the exercise of the particular profession. The duty imposed upon the insurance agent as well as those others set forth above upon whose advice the client or patient depends is that of "reasonable diligence" a breach of which duty results in an action in negligence.

*Id.* (internal citation omitted).  Stated another way, "an insurance agent is responsible not only for his unfaithfulness but also for his fault or neglect." *Smith v. Millers Mutual Insurance Co.,* 419 So.2d 59, 64 (La.App. 2 Cir. 1982), *writ denied*, 422 So.2d 155 (La. 1982).

The cases relied on by the Defendants are misleading and inapplicable. For example, the Defendants cite *Ragas v. Tarleton*, 06-4137, 2006 WL 2925448 (E.D. La. Oct. 10, 2006) and other cases for the proposition that an agent can only be liable to its client for "intentional or negligent representations as to facts which it knew or had reason to know were false."  However, the Defendants conveniently omit the discussion that follows the quoted sentence in *Ragas*, in which the federal court recognizes the duty of reasonable diligence described above.  See *id.* at *3. There, the Court expressly recognized the "duty between an agent and the insured under Louisiana law[.]"  Rather than limiting all actions by a client against his agent to instances of false representations, as suggested by the Defendants, the *Ragas* court was merely noted that the agent's duty of "reasonable diligence" does

not extend to "the duty to assist or advocate on the customer's behalf in handling and negotiating claims with the insurer." *Id.*

The Defendants also assert that "no cause of action exists against an agent of a named insurer, unless the agent personally bound itself or exceeded its authority." As authority for this assertion, they cite *Ragas*, *supra*, despite the fact that neither this nor similar language appear in that case. The language does appear in *Leblanc v. Mid-Continent Life Ins.*, 93-2677, 1993 WL 432374 (E.D. La. Oct. 21, 1993), where the court made this oddly overbroad statement in the context of a dispute over whether an agent could be held liable for a failure to pay benefits. The court cited a 1933 pre-insurance code case -- not 1993 as indicated by the Defendants -- that also considered the issue of whether or not the agent could be liable for the failure to pay on the policy, as well as another non-insurance case involving the law of agency.

Neither of these cases addressed the types of claims stated by Acadian against Thibeaux (*i.e.* his failure to carry out an assumed obligation to Acadian with reasonable diligence). Obviously, the dispute in these cases, as well as in most cases cited by the Defendants, was whether the agent had the authority to bind his principal, such as in a promise to pay benefits, or whether the agent had exceeded that authority and bound himself personally for those benefits. These cases have no relevance to the issue of whether an insurance agent has an independent duty of "reasonable diligence" arising from his relationship with his client, an issue addressed countless times by Louisiana and federal courts in the affirmative.

One corollary of the "reasonable diligence" duty is that an agent must follow his client's reasonable instructions concerning the procurement of insurance coverage.  "An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance." *Karam v. St. Paul Fire & Marine Insurance Co.,* 281 So.2d 728, 730-31 (La. 1973).  In order to state a claim for loss arising out of the failure of an agent to obtain coverage, the plaintiff must allege: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured. *Prest v. Louisiana Citizens Property Ins. Corp.*, 2012-0513, *8 (La. 12/4/12); --- So.3d ---.

Here, Acadian made those allegations in its petition and, in support of this Motion to Remand, has offered factual support for each one of these elements. Acadian has alleged 1) that Thibeaux agreed to send the invoice to Merit and procure coverage under the Lexington Policy; 2) that Thibeaux failed to procure that coverage and failed to notify Acadian of same; and 3) that Thibeaux's actions or omissions led Acadian to believe the coverage had been procured.[35]   Therefore,

---

[35]   The fact that the coverage at issue was intended to cover Merit and not Acadian is a distinction without a difference.

because Acadian has properly pleaded a cause of action against Thibeaux for breach of his duty of reasonable diligence, particularly the duty to procure coverage, Thibeaux has been properly joined in this matter.  The court thus lacks diversity jurisdiction over Acadian's claims.

## B.    The Court Lacks Original Jurisdiction Under the OCSLA.

The Defendants next assert that subject matter jurisdiction exists over Acadian's claims under the Outer Continental Shelf Lands Act ("OCSLA") "because the site of injury and the relevant contract between Merit and Acadian involved a fixed platform on the Outer Continental Shelf ("OCS") in the Gulf of Mexico."[36] They also note that the accident involved in that suit "occurred on a fixed platform in the Outer Continental Shelf next to the Coast of Louisiana and involved contracts and insurance involving the accident[.]"  The Defendants thus address their entire argument for OCSLA jurisdiction to the circumstances of the Merit Suit, rather than the instant suit.

Obviously, the relevant question here is not whether that suit enjoys jurisdiction, but whether the Court can exercise federal jurisdiction over Acadian's claims in this suit.  The appropriate analysis for determining whether jurisdiction exists under the OCSLA is found in the text of the statute's jurisdictional provision, 43 U.S.C. § 1349.  Section 1349(b) provides, in pertinent part, as follows:

(1) Except as provided in subsection (c) of this section, the

---

Thibeaux's failure to procure the coverage has directly resulted in Acadian's exposure to liability in the Merit Suit.

[36]    Notice of Removal, pp. 3-4.

district courts of the United States shall have jurisdiction of cases and controversies **arising out of, or in connection with**

> (A) any operation conducted on the outer Continental Shelf which involves **exploration, development, or production** of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals[.]

The Fifth Circuit has defined "operation" as the doing of "some physical act conducted **on the outer Continental Shelf** which involves exploration, development or production of the minerals . . . ." *Amoco Production Co. v. Sea Robin Pipeline Co.,* 844 F.2d 1202, 1207 (5th Cir. 1988) (citing 43 U.S.C. § 1349) (emphasis added).

Federal courts in this circuit have noted a distinction between actions taken on land and operations on the OCS.  See *e.g.*, *Dominion Exploration & Prod., Inc. v. Ameron Int'l Corp.*, CIV.A. 07-3888, 2007 WL 4233562 (E.D. La. Nov. 27, 2007) (dispute over a delay in the completion *on land* of an offshore spar floating production facility lacked federal jurisdiction under the OCSLA); *Huffco Petroleum Corp. v. Transcon. Gas Pipe Line Corp.*, 681 F. Supp. 400, 401-02 (S.D. Tex. 1988) (finding that "[t]he contractual dispute in the case at hand falls beyond these three stages [exploration, development, or production] and therefore invokes neither federal interest nor federal court jurisdiction."); *Pogo Producing Co. v. S. Natural Gas Co.*, 599 F. Supp. 720, 722 (W.D. La. 1984) (court lacked OCSLA jurisdiction because dispute arose out of contract on land rather than leases on OCS).

It seems beyond dispute to say that no "operations" are at issue in Acadian's claims here.  The claims against the Agency Defendants involve their breach of a duty to send an invoice for an additional premium to one of Acadian's clients.  This breach occurred on land in Lafayette, not on the OCS and not in the course of any exploration, development, production or other "operations."

Similarly, Acadian's claims against Lexington involve a classic insurance coverage dispute and do not turn on exploration or production on the OCS, but rather arise out of Lexington's obligations to defend and indemnify Acadian and Merit, regardless of where the underlying tort occurred.  These obligations, which arose on land, have existed and continue to exist regardless of any "operations" on the OCS.

In sum, this dispute concerns the Agency Defendants' failure to issue an invoice to Acadian's client and Lexington's failure to honor its obligations to Acadian, and thus arises out of clerical work and agreements made on land, not oil and gas operations on the OCS.  Any connection to the OCS was completely fortuitous.  For these reasons, the Court lacks original jurisdiction over Acadian's claims under the OCSLA.

## C.  Supplemental Jurisdiction Cannot Serve as the Basis For Removal of Acadian's Claims.

Finally, the Defendants' assertion that the Court can exercise supplemental jurisdiction over Acadian's state law claims is completely contrary to law.  The Defendants appear to contend that Acadian's claims share a common nucleus of operative fact with claims in the Merit Suit.  However, the federal

statute providing for supplemental jurisdiction, 28 U.S.C. § 1367, provides, in pertinent part:

> **[I]n any civil action of which the district courts have original jurisdiction**, the district courts shall have supplemental jurisdiction over all other claims that are so related **to claims in the action** within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.[37]

Obviously, Acadian's claims are not "in the civil action" over which the federal court has original jurisdiction, as required by the statute.  No federal court has original jurisdiction over any claims in the State Court Suit; thus, Section 1367 cannot serve as a basis for removal.

This interpretation of the statute was confirmed by the United States Supreme Court in *Syngenta Crop Prot., Inc. v. Henson*,[38] and is now considered axiomatic.  <u>See</u>, *e.g. Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 295 (5th Cir. 2010) ("Supplemental jurisdiction on its own does not give federal courts the power to remove a state case that does not arise from a federal question or offer complete diversity of citizenship.").  Therefore, because the State Court Suit involves neither a federal question nor complete diversity, the Court may not exercise supplemental jurisdiction over Acadian's claims.

### III.   CONCLUSION

The   Defendants   failed   to   overcome   the   "heavy   burden"   and

---

[37]   28 U.S.C. § 1367(a).

[38]   537 U.S. 28, 34 (2002)  ("Ancillary jurisdiction, therefore, cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441.").

presumption that the Court lacks jurisdiction over this matter.   There is no complete diversity between the parties, as Acadian has pleaded a viable cause of action against defendant Thibeaux, a Louisiana citizen.   Thus, the Court lacks diversity jurisdiction over this matter.  In addition, the Defendants failed to show that original jurisdiction exists for Acadian's claims under 43 U.S.C. § 1349, since this dispute arises out of paperwork performed and agreements made on land, not out of any exploration, production, development, or any other "operations" on the OCS.   Finally, since none of Acadian's claims enjoy original jurisdiction, supplemental jurisdiction may not serve as a basis for removal.  For these reasons, Acadian respectfully requests that this Court remand this matter to the 15th Judicial District Court in and for Vermilion Parish, Louisiana.

Respectfully submitted,

**OTTINGER HEBERT, L.L.C.**

/s/ Benjamin D. Jones
Paul J. Hebert
Bar Roll No. 6738
William H. L. Kaufman
Bar Roll No. 29929
Benjamin D. Jones
Bar Roll No. 33910
P. O. Drawer 52606
1313 W. Pinhook Road (70503)
Lafayette, Louisiana  70505-2606
(337) 232-2606 Telephone
(337) 232-9867 Facsimile

*Attorneys for Acadian Contractors, Inc.*

## **CERTIFICATE**

I HEREBY CERTIFY that on the 5th day of April, 2013, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.

/s/ Benjamin D. Jones